## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHAKIRA STAFFORD, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. <u>CIV-23-89-JD</u> |
| TINKER FEDERAL CREDIT UNION; BOKF, N.A., d/b/a TRANSFUND, A NATIONAL ASSOCIATION; and FIDELITY NATIONAL INFORMATION SERVICES, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>NOTICE OF REMOVAL</u>

Defendant Tinker Federal Credit Union ("TFCU"), by its undersigned attorneys, hereby removes this action, currently pending in the District Court of Oklahoma County, Oklahoma, Case No. CJ-2022-5078, to the United States District Court for the Western District of Oklahoma, pursuant to 28 U.S.C. §§ 1332(d), 1331, 1446, and 1453, on the grounds that federal diversity jurisdiction exists under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2) and federal question jurisdiction exists under 28 U.S.C. § 1331.[1]

---

[1] By removing this action to this Court, Defendants do not waive any defenses, objections, or motions available under state or federal law.  Defendants specifically reserve the right to move for dismissal of some or all of Plaintiff's claims and/or seek dismissal on grounds of lack of personal jurisdiction, insufficient or improper service of process, or improper venue, or under the doctrine of forum non conveniens.

## BACKGROUND

1.      On October 14, 2022, Plaintiff Shakira Stafford filed this class action in the District Court of Oklahoma County, Oklahoma against TFCU.

2.      TFCU was served with the summons and original petition on October 24, 2022.  At the time, TFCU was the only named and served Defendant.

3.      TransFund was served with the summons and amended petition on January 6, 2023. Plaintiff purports to have served FIS with the summons and amended petition on January 11, 2023.

4.      On December 28, 2022, Plaintiff filed an Amended Petition, which named BOKF, N.A., d/b/a Transfund ("Transfund") and Fidelity National Information Services, Inc. ("FIS") as Defendants, creating minimal diversity under 28 U.S.C. 1332(d).

5.      A copy of all process and pleadings served on Defendants are attached as **Exhibits 1-5**.  A copy of the Court's Docket Sheet is attached as **Exhibit 6.**

6.      Plaintiff brings this putative class action based on Defendants' alleged "failure to safeguard the highly sensitive customer data, including credit and debit card numbers as well as cardholder names, account numbers, expiration dates, card verification values ('CVV'), and/or PIN data for debit cards (collectively, Payment Card Data, 'PCD') . . . of TFCU's customers . . . resulting in a BIN attack on or about August of 2022 in which the PCD was compromised and unauthorizedly disclosed and accessed by cybercriminals, causing widespread injury and monetary damages." Amended Petition ("Petit.") ¶ 1.

7.    The petition asserts claims for negligence, negligence per se based on violations of federal law, breach of implied contract, unjust enrichment, declaratory relief, violation of the Oklahoma Consumer Protection Act, and invasion of privacy. Petit. ¶¶ 96–171.

8.    For each of Plaintiff's claims, she seeks to represent a putative class defined as "[a]ll citizens of the State of Oklahoma whose [payment card data] was compromised in the BIN Attack disclosed by Defendants on or about August 2022." *Id.* ¶ 91. She estimates the class to consist of "at least 14,500 persons." *Id.* ¶ 60.

9.    Plaintiff, on behalf of herself and the putative class, seeks class certification, appointment of identified counsel, compensatory and punitive damages, disgorgement of profits, equitable relief, and reasonable attorneys' fees and costs. *Id.* ¶¶ Prayer for Relief (A)–(J); 151.

## VENUE IS PROPER

10.    Venue is proper under 28 U.S.C. § 1441(a) because this Court is the United States District Court for the district and division embracing the place where the state-court case was pending.

## REMOVAL IS TIMELY

11.    Plaintiff filed the amended petition, naming Transfund and FIS for the first time, on December 28, 2022. Accordingly, this Notice of Removal is timely filed within the thirty (30) day time frame provided by 28 U.S.C. § 1446(b).

## ALL DEFENDANTS CONSENT TO REMOVAL

12.     Counsel for TFCU has conferred with counsel for Transfund and FIS, and both Transfund and FIS consent to removal, in accordance with 28 U.S.C. § 1453(b).

## THIS CASE IS REMOVABLE UNDER CAFA

13.     CAFA provides for federal jurisdiction over a proposed class consisting of more than 100 members when: (1) there is minimal diversity; (2) there is at least $5 million in controversy; and (3) none of the exceptions to CAFA jurisdiction apply.  28 U.S.C. §§ 1332(d)(2), 1453(d).

### A.     The Putative Class Includes More Than 100 Members.

14.     Although TFCU does not believe Plaintiff has defined a proper class or is entitled to any relief, Plaintiff's allegations state that the proposed class would include at least 100 members, as required by 28 U.S.C. 1332(d)(5)(B).

15.     Plaintiff alleges that "[o]n information and belief . . . FIS and/or Transfund and TFCU deactivated the affected debit and/or credit cards, including of Stafford and the Class Members, approximating at least 14,500 persons." Petit. ¶ 60.

16.     Plaintiff also alleges that "the proposed Class [consists] of thousands of members, far too many to join in a single action." *Id.* ¶ 94.

17.     Thus, the petition alleges that the putative class will contain more than 100 members.

### B.     Minimal Diversity of Citizenship Exists.

18.     Minimal diversity under CAFA exists when any member of the putative class is a citizen of a state different from *any* defendant.  28 U.S.C. § 1332(d)(2)(A); *see*

*also Cox v. Allstate Ins. Co.*, 2008 WL 2167027, at *1 (W.D. Okla. May 22, 2008) (recognizing that minimal diversity is satisfied if "any member of the class is a citizen of a state different from any defendant").

19.     A corporation is a citizen of every state in which it is incorporated and has a principal place of business.  *See* 28 U.S.C. § 1332(c)(1).

20.     As alleged in the amended petition, FIS is incorporated in Georgia and its principal place of business is in Jacksonville, Florida. Petit.¶ 11. FIS is therefore a citizen of Georgia and Florida.

21.     Plaintiff Shakira Stafford alleges that she is "is an Oklahoma citizen residing in Shawnee, Oklahoma, in Pottawatomie County, where she intends to remain." Petit. ¶ 7.  Plaintiff is therefore a citizen of Oklahoma.

22.     Thus, minimal diversity exists because at least one of the alleged members of the putative class (*e.g.*, Plaintiff) is a citizen of a state other than Georgia or Florida.

**C.     The Amount in Controversy Exceeds $5,000,000.**

23.     Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest or costs. *See* 28 U.S.C. § 1332(d)(6). The class claims alleged by Plaintiff easily meet this threshold.

24.     The amount in controversy is not "the amount the plaintiff will recover," but "an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008); *see also Gibson v. Jeffers*, 478 F.2d 216, 220 (10th Cir. 1973) ("The test to determine amount in controversy is not

the sum ultimately found to be due, but the sum demanded in good faith."). TFCU's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).[2]

25.     The allegations in Plaintiff's petition easily satisfy the minimum amount in controversy.  At a bare minimum, Plaintiff has alleged that there are at least 14,500 putative class members. Petit. ¶ 60. Thus, this action need only present in controversy $345.00 per class member to meet the amount in controversy requirement. Based on the allegations, it is clear that the class members seek more than that.

26.     Plaintiff asserts claims for negligence, negligence per se, breach of implied contract, unjust enrichment, declaratory relief, violation of the Oklahoma Consumer Protection Act, and invasion of privacy. *Id.* ¶¶ 96–171.

27.     Plaintiff claims that, as a result of Defendants' conduct, she and putative class members have suffered injury in the form of: "damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PCD of Plaintiff and Class members; damages arising from Plaintiff's inability to use their debit or credit cards because those cards were canceled suspended, or otherwise rendered unusable as a result of the BIN Attack and/or

---

[2] Defendant do not concede Plaintiff is entitled to any relief. By discussing any specific type or amount of relief in controversy, Defendants do not suggest that the relief is actually legally permissible, only that it is legally possible to recover such amounts, and thus should be included in the Court's consideration of the amount in controversy. Defendants reserve all rights in this regard.

false or fraudulent charges stemming from the BIN Attack, including but not limited to late fees charged and foregone cash back rewards; loss of benefits for PTO; damages from lost time and effort to mitigate the actual and potential impact of the BIN Attack for the remainder of their lives including, *inter alia*, by placing 'freezes' and 'alerts' with credit reporting agencies, containing their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, filing police reports and damages from identity theft, which may take months if not years to discovery and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy." *Id.* ¶ 117.

28.     Although the petition seeks actual damages in an unspecified amount, the categories of damages Plaintiff seeks demonstrate that, in the aggregate, more than $5,000,000 is in controversy.

29.     For example, under the Oklahoma Consumer Protection Act, a plaintiff may recover actual damages, attorneys' fees and costs up to $10,000 per claim, and, for willful violations, a civil penalty up to $10,000 per violation. *See* 15 O.S. § 761.1.

30.     The petition seeks actual damages and attorneys' fees, and also alleges that Defendants' conduct was willful. *See* Petit. ¶¶ 56, 165.

31.     Thus, based on Plaintiff's OCPA claim alone, the petition demonstrates that it is legally possible for Plaintiff and the putative class to recovery more than $5,000,000. *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012) (recognizing that the removing defendant "does not have to prove that the plaintiff is more likely than not to ultimately recover damages, but merely that (1) state law permits a

punitive damages award for the claims in question; and (2) the total award, including compensatory and punitive damages, could exceed $5,000,000.").

32.    In addition, Plaintiff seeks punitive damages, which must be considered in establishing the amount in controversy. *See Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) ("Punitive damages may be considered in determining the requisite jurisdictional amount.").

33.    Under Oklahoma law, punitive damages are available "[i]n an action for the breach of an obligation not arising from contract" when the defendant is found guilty of reckless disregard for the rights of others[.]" 23 O.S. § 9.1. Under such circumstances, a jury may award punitive damages for $100,000 or the amount of the actual damages, whichever is greater. *Id.*

34.    Plaintiff alleges that Defendants acted with reckless disregard. Specifically, Plaintiff claims that her and putative class members' "private and sensitive PCD was publicly disclosed by Defendants in the BIN Attack with reckless disregard for the offensiveness of the disclosure." Petit. ¶ 171. Plaintiff also alleges that "Defendants' approach to maintaining the privacy and security of the PCD of Stafford and the Class members was lackadaisical, cavalier, reckless, or at the very least, negligent." *Id.* ¶ 68.

35.    Thus, the potential availability of punitive damages puts additional millions of dollars at issue for purposes of determining the amount in controversy.

36.    The injunctive relief sought by Plaintiff must also be considered when determining whether the amount in controversy is satisfied. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive

relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."). When calculating the amount-in-controversy, the value of the proposed injunction from the defendant's point of view—or the total cost for the defendant to comply with the injunction—is an appropriate measure. *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (the law of the Tenth Circuit is the "either viewpoint rule," which considers either the value to the plaintiff, or the cost to the defendant of injunctive and declaratory relief, as the measure of the amount in controversy); *see also Cox v. Allstate Ins. Co.*, 2008 WL 2167027, at *3 (W.D. Okla. May 22, 2008) (holding that the value of injunctive relief sought is determined "by 'the pecuniary effect an adverse declaration will have on either party to the lawsuit'") (quoting *City of Moore v. Atchison, Topeka, & Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983)).

37.     Here, Plaintiff seeks injunctive relief that would require Defendants to:

- "engag[e] third-party security auditors/ penetration testers as well as internal security personnel to conduct testing . . . on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;"

- "engag[e] third-party security auditors and internal personnel to run automated security monitoring;"

- "audit[], test[], and train[] their security personnel regarding any new or modified procedures;"

- "segment[] customer data by . . . creating firewalls and access controls . . .;"

- "purg[e], delet[e], and destroy[] in a reasonably secure manner PCD not necessary for their provisions of services;"

- "conduct[] regular database scanning and securing checks;"

- "routinely and continually conduct[] internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and"

- "educat[e] their customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Defendants' customers must take to protect themselves." Petit. ¶ 158.

38.     The potential cost of complying with each of these directives would further push the amount in controversy over the $5,000,000 threshold.

39.     Plaintiff also seeks attorneys' fees, which courts consider as part of the removal analysis. *See, e.g.*, *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) (recognizing that attorneys' fees should be considered in determining the jurisdictional amount); *see also Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) ("The Supreme Court has long held that when a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship.").

40.     Attorneys' fees are at issue in this case. The Oklahoma Consumer Protection Act, for example, provides for the "payment of actual damages sustained by the customer and costs of litigation including reasonable attorneys' fees." 15 O.S. § 761.1(A).

41.     Attorneys' fees equal to 25% or more of total damages are frequently deemed reasonable for purposes of calculating the amount in controversy under CAFA.

*See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 199 (3rd Cir. 2007) (factoring in potential award of 30%); *Baylor v. Zipcar, Inc.*, 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2015) (factoring in potential award of 25%).

42.    Because Plaintiff seeks to recover compensatory damages, punitive damages, and attorney's fees in excess of $5,000,000, the amount-in-controversy requirement is satisfied.

## THIS CASE IS ALSO REMOVABLE UNDER FEDERAL QUESTION JURISDICTION

43.    Federal courts have jurisdiction over a state law claim that "necessarily raises a federal question that is actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *The Cherokee Nation v. Johnson & Johnson, Inc.*, 2015 WL 8751910, at *2 (E.D. Okla. Dec. 14, 2015) (quotation marks omitted) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

44.    A federal question is "substantial" "[w]here a plaintiff's ability to prevail on the case-in-chief rests on the resolution of federal law." *Id.* (citing *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1234 (10th Cir. 2006)).

45.    The amended petition extensively references and relies upon federal law. *E.g.*, Petit. ¶¶ 88–90, 94(d)(iv), 110, 120–27, 164. Indeed, Plaintiff expressly alleges that "it will be necessary to answer . . . [w]hether Defendants' security measures to protect their POS system were reasonable in light of FTC data security recommendations[]." *Id.*

¶94(d)(iv). Plaintiff predicates her negligence and OCPA claims, in part, on alleged violations of the FTC Act. *Id.* ¶¶ 110, 164.

46.     Moreover, Plaintiff's negligence per se claim rests entirely on resolution of federal law. Specifically, Plaintiff claims that Defendants were negligent per se as a result of their alleged violations of the FTC Act and the Safeguards Rule of the Gramm-Leach-Bliley Act. Petit. ¶¶ 125, 126. No other violation of law is alleged. Thus, Plaintiff's claim for negligence per se necessarily raises a substantial federal question that is actually disputed, warranting removal. Because Plaintiff's negligence per se claim "rests on the resolution of federal law," removal is proper under 28 U.S.C. § 1331. *See The Cherokee Nation*, 2015 WL 8751910, at \*2.

## TFCU HAS COMPLIED WITH ALL PREREQUISITES FOR REMOVAL

47.     In accordance with 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders the action in the District Court of Oklahoma are attached as **Exhibits 1-5**. A copy of the Court's Docket Sheet is attached as **Exhibit 6.**

48.     Pursuant to 28 U.S.C. § 1446(a), TFCU will contemporaneously give Plaintiff written notice of this filing and file a copy of this Notice of Removal with the District Court of Oklahoma County, Oklahoma.

49.     TFCU reserves the right to amend or supplement this Notice of Removal and it reserves all rights and defenses, including those available under Federal Rule of Civil Procedure 12.

50.     TFCU requests a jury trial in this case.

## <u>CONCLUSION</u>

51.     For all the reasons stated above, this action is a civil action over which this

Court has original jurisdiction pursuant to 28. U.S.C. § 1332(d) and § 1331.

WHEREFORE, TFCU respectfully requests removal of this case to the United

States District Court for the Western District of Oklahoma.

Respectfully submitted,

*/s/ Lyndon W. Whitmire*
Lyndon W. Whitmire, OBA No. 17164
Kelsey A. Chilcoat, OBA No. 32750
**PHILLIPS MURRAH P.C.**
Corporate Tower, Thirteenth Floor
101 North Robinson
Oklahoma City, OK  73102
Telephone: (405) 235-4100
Facsimile:  (405) 235-4133
lwwhitmire@phillipsmurrah.com

*-and-*

Tammy B. Webb (pro hac vice forthcoming)
Anna A. El-Zein (pro hac vice forthcoming)
**SHOOK, HARDY & BACON LLP**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1900
Facsimile:  (415) 391-0281
tbwebb@shb.com
aelzein@shb.com

***Attorneys for Defendant***
***Tinker Federal Credit Union***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 27th day of January 2023, a true and correct copy of the foregoing was mailed via first class mail, postage prepaid, to:

Jason B. Aamodt, OBA # 16974
Matthew D. Alison, OBA # 32723
**Indian & Environmental Law Group, PLLC**
406 South Boulder Ave., Suite 830
Tulsa, OK  74103
Telephone: (918) 347-6169
Facsimile:  (918) 948-6190

Lynn A. Toops (*pro hac vice forthcoming*)
Amina A. Thomas (*pro hac vice forthcoming*)
**COHEN & MALAD, LLP**
One Indiana Square, Suite1400
Indianapolis, IN  46204
ltoops@cohenmalad.com
athomas@cohenmalad.com

J. Gerald Stranch, IV (*pro hac vice forthcoming*)
Peter J. Jannace (*pro hac vice forthcoming*)
**BRANSTETTER, STRANCH & JENNINGS, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN  37203
gerards@bsjfirm.com
peterj@bsjfirm.com

*Attorneys for Plaintiff*

*/s/ Lyndon W. Whitmire*